Dickman, J.
The improvement of Third street in the city of Cincinnati, which gave rise to the special assessment under consideration, was made under the act of April 25, 1885 (82 Ohio L. 156), which authorizes the Board of Public Works in cities of the first grade of the first class, to cause any of the streets, avenues or highways of such city to be improved with granite block, asphalt pavement or other material. The enabling statute provides, that one-half of the cost of any such improvement shall be paid by the city at large, and that one-half of the entire cost of such improvement shall be assessed upon the parcels of land bounding or abutting upon the improvement, in the manner provided by law. And in making such improvement, the Board of Public Works is to have and *300 exercise all the powers and perform all the duties of council, in the prosecution of the work or furnishing materials therefor, the making and levying assessments therefor, and the enforcement and collection thereof.
On June 15, 1885, the Board of Public Works of Cincinnati, in compliance with the provision of the statute, declared by resolution the necessity of improving a part of Third street with granite blocks; and on October 26, 1885, in behalf of the city, passed an ordinance to make such improvement in accordance with the terms of such resolution. The ordinance provided, that one-half of the expense of the improvement should be assessed per foot upon the property abutting thereon, according to the laws and ordinances on the subject of assessments. In the year 1886, the city entered into a contract for improving the street, and the improvement was completed and accepted on August 3, 1887.
At the times when the resolution declaring it necessary to improve, and the ordinance to improve were passed, and also when the contract for the improvement'was made, the law governing special assessments, enacted March 27, 1884 (81 Ohio L. 86) provided as follows:
“ Section 2269. * * * If there is land not sub-divided into lots, the council shall fix the value of the lots or the value of the front of such land to the usual depth of lots by the average of two blocks, one of which shall be next adjoining on each side, and if there are no blocks so adjoining, the council shall fix the value of the lots or lands to be assessed so that it will be a fair average of the assessed value of other lots in the neighborhood; and if in making a special assessment by the foot front, there is land bounding or abutting upon the improvement not sub-divided into lots, or if there be lots numbered and recorded, bounding or abutting on said improvements and lying lengthwise of said improvements, the council shall fix, in like manner, the front of such land to the usual depth of lots, so that it will be a fair average of the depth of lots in the neighborhood which shall be subject to such assessment.”
*301 This statute was amended March 11, 1887 (84 Ohio L. 72), by omitting from the section the clause, “ or if there be lots numbered and recorded, bounding or abutting on said improvements and lying lengthwise of said improvements.” After such amendment-: — on August 12, 1887 — an assessing ordinance was passed to defray the cost of the improvement. In levying the assessment, and in apportioning the amount to the lot of the defendants in error, the assessment was made upon the entire lengthwise frontage of the lot on Third street, without first fixing the front of the lot to the usual depth of lots by the average of two blocks, so as to be a fair average of the depth of lots in the neighborhood. Under the statute as amended March 11, 1887, the assessable frontage of the defendants’ lot was held to be 104.50 feet, and the cash assessment $668.96, whereas, under the operation of the act of March 27, 1884, the assessable frontage would have been -only 60.2 feet, and the cash assessment $393.60 only.
The material question, therefore, presented in this cause by the petition and demurrer is, under what law should the assessment have been made; whether the act of March 27, 1884, which was in force prior to and at the time of the passage of the ordinance to improve, should have been applied, or the law as amended March 11, 1887, after the passage of the ordinance to improve, but prior to the passage of the assessing ordinance.
The law contemplates that before the ordinance to make the improvement is passed, there shall be certain preliminary proceedings. Such ordinance is the resultant of those proceedings, and evidences the final determination of the property-owners, through their public agents, to assume whatever burdens may be entailed upon them by the law in force when the improvement ordinance is passed. To enable the city to determine whether it is best to undertake the improvement — to afford persons interested an opportunity to be heard, and if desired, to protest or submit objections to the work, the necessity of the improvement is to be declared by resolution, and notice of the resolution brought home to the abutting owners. Plans and profiles are to be prepared and placed on file for *302 public inspection; a careful estimate is to be made of the cost of the work; and the owners of lots or land abutting upon the proposed improvement are afforded an opportunity of filing their claims for damages. At the expiration of the time limited for filing claims for damages, the council is to determine whether it will proceed with the improvement or not, and whether the claims for damages shall be judicially inquired into.
Having determined to make the improvement, it is provided by amended section 2264 of the Revised Statutes (78 Ohio L. 259), that the costs and expenses of the improvement, or any part thereof, which may not be assessed on the general tax list, “ shall be assessed by the council on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the feet front of the property abutting upon the improvement, as the council, by ordinance setting forth specifically the lots and lands to be assessed, may determine before the improvement is made, and in the manner and subject to the restrictions herein contained.” It is evident from the language of this section, that the property to be assessed, and the mode of assessment, whether by benefits, by valuation, or by the foot front, are to be determined by ordinance before the improvement is made ; and the assessment is to be in the mánner, and subject to the restrictions prescribed by the statute in force at the date of the improvement ordinance.
Although special assessments, when made according to law, become a lien from the date of the assessment, upon the respective lots or parcels of land assessed, the owner will not be liable, under any circumstances, beyond his interest in the property assessed, at the time of the passage of the ordinance or resolution to improve. — Rev. Stats, sec. 2286. At the date of the ordinance to improve, the defendants in error could not have been held liable on more than 60.2 feet — the frontage of their land as measured on Third street to the usual depth of lots. That was the extent of their assessable interest at the *303 time the ordinance to improve was passed, and the passage of the ordinance is the date fixed by the statute to which their personal liability on the assessment is to be referred.
It is reasonable to presume that the passage of the ordinance to improve the street, was not without reference to existing rights and liabilities. The ordinance was doubtless passed in full view of the law as it then stood in regard to special assessments. It embodied the scheme of the street improvement, and in passing it the Board of Public Works could not have contemplated any assessments other than those which were then authorized by statute. The assessment was only in aid of the improvement scheme as declared in the improvement ordinance, and did not enlarge or diminish the rights or liabilities of the defendants at the date of the passage of such ordinance. By virtue of the law then in force, they were obligated to pay an assessment on the basis of 60.2 feet of frontage, but under an amendment of the same law after the passage of the improvement ordinance it is claimed they became liable on 104.50 feet. In our view, under the prior act they became vested with a substantial right of which they could not be deprived by the operation of the subsequent law.
Under the constitutional prohibition, the general assembly has no power to pass retroactive laws. Art. II, sec. 28. Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to-transactions or considerations already past must be deemed retrospective or retroactive. Society for Prop. of Gospel v. Wheeler, 2 Gallison, 105. Puffendorf says: “ A law can be repealed by the law giver; but the rights which have been acquired under it while it was in force, do not thereby cease. It would be an act of absolute injustice to abolish with a law all the effects which it had produced.” Droit de la Nat. L. 1, c. 6, § 6. There is nothing in the language of the act of March 11, 1887, passed after the ordinance to improve, which gives it other than a prospective operation; and it can not by judicial construction be made to act retro *304 spectively to the impairment or destruction of vested rights. In our view, if the property of the defendants is not to be assessed in the mode or manner prescribed by the act of March 27, 1884, a vested right acquired under existing laws is taken away, and a new obligation is created, and a new liability imposed by an amendatory statute operating not only retroactively, but contrary to the equity and justice of the ease.
It is á general rule, that retrospective laws which conflict with a state constitution, or which tend to divest vested rights of property, are void, and courts will always struggle to give laws a prospective construction or interpretation. Sedgwick on Stat. and Const. Construction, 346, 2 Ed.
Houston v. McKenna, 22 Cal. 550, is an ¡Illustrative case of constitutional analogy, although a case in which by giving a retroactive effect to the law, the obligation of the contract would have been impaired. The plaintiff, in November, 1860, entered into a contract for the improvement of streets in San Francisco under the law of 1859, which provided that for payment an assessment should be levied upon the adjacent lots in proportion to their respective values. Before the completion of the work the amendatory act of 1861 was passsed, providing for an assessment in payment of such contracts according to the street frontage of each lot. It was held, that the provisions of the law of 1859 respecting the mode of assesssment was part of the contract, and that the assessment, though made after the amendatory act, must be in the mode prescribed by the old law. Crocker, J., in delivering the opinion of the court, says: “The act of 1861 changes the rights of the plaintiff and the liability of the property and its owners, by changing the extent of that liability — making some to pay more and others a less sum than they would have been liable to pay under the act of 1859. Such a result can only be avoided by giving the act of 1861 a pros-, pective effect — that is, limiting its application to those contracts made after it took effect. It is a well settled rule of law that statutes should not receive a retroactive construction, unless the intention of the legislature is so clear and positive as by no possibility to admit of any other construction.”
*305 We are not without adjudicated cases in Ohio and elsewhere, which go far to establish the rule, that the rights and liabilities of abutting owners growing out of special assessments for street improvements, are fixed by the law existing when the improvement is ordered.
In Douglass v. Cincinnati, 29 Ohio St. 165, the council in March, 1875, declared by resolution the necessity of the improvement. The ordinance directing the improvement was passed, it seems, during that year. In January, 1876, the •council passed an ordinance assessing the cost of the improvement by the foot front, on the several lots of land abutting on the improved street. On November 8, 1875, Mrs. Douglas, the owner of an abutting lot at the time of the preliminary proceedings, conveyed to Corry that part of the abutting lot which fronted on the street, retaining the part which was in the rear of the strip conveyed. Mrs. Douglas set up by way of defense, that at the date of her conveyance to Corry, the ordinance assessing the cost of the improvement had not been passed ; °and that the part of the premises not so conveyed did not abut on the street, and was not subject to the lien created by the assessment. But it was held, that what constitutes abutting property liable under the municipal code to be assessed for the improvement of a street, is to be determined by the situation of the property at the time of the passage of the ordinance directing the improvement; and that the subsequent proceedings were merely 'the carrying out the scheme of improvement provided for in the ordinance
In Spangler v. Cleveland, 35 Ohio St. 469, it was held that where an assessment is per foot front, and is based upon an estimate of the cost, and a certain number of feet frontage, and the cost of the work falls below such estimate, the court, in reducing such assessment to the actual cost, and in fixing the cost per front foot, should not deduct from the frontage actually assessable when the improvement was ordered, any part thereof subsequently appropriated by the municipal corporation for streets. In other words, the lot-owners were liable according to the feet front assessable when the work was or *306 dered, and not according to the frontage as afterward reduced by appropriation.
Our attention has been called to the case Griswold v. Pelton, 34 Ohio St. 482, in which the court in considering the effect of sections 542 and 543 of the municipal code, uses the language, “These sections were in force at the time the assessing ordiñance was passed, and govern the rights of the parties in this controversy, in respect to the limitations named, to the protection of which the plaintiff is clearly entitled.” In that case, the ássessment was confined to the front of the land to the usual depth of lots. The limitation of the assessment to twenty-five per cent, of the value of the property assessed after the improvement is made, was in force when both the improvement and assessing ordinance were passed. And as to the main point of contention, that the assessment should not be in accordance with section 543 — as amended after the improvement ordinance was passed — which authorized a levy each year of an amount of the special assessment not exceeding ten per cent, of the value of the land after the improvement is made, it will be observed, that the question was chiefly as to the mode of payment or number of installments, and not, as in the case at bar, whether the amount of the assessment should be increased beyond what it would have been if levied at the time the ordinance of improvement was passed.
Entertaining as we do the opinion that the defendants in error acquired a vested right under the act in force at the time of the passage of the improvement ordinance, which, by virtue of the constitutional inhibition, could not be impaired or taken away by the subsequent amendment and repeal of the act, we deem it unnecessary to consider whether the various steps in council and before municipal board, with respect to a street improvement, constitute a pending proceeding within the meaning of section 79 of the Rev. Stats., which could not be affected by such repeal or amendment of the law. But we may refer to the case Raymond v. Cleveland, 42 Ohio St. 522, in which it is held, upon forcible reasoning, that the successive steps to make an assessment or re-assessment for a street improvement, constitute a proceeding within the follow *307 ing saving clause of section 1539 of the Revised Statutes : “ No suit, prosecution, or proceeding shall be in any manner alfected by such change, but the same "shall stand or proceed as if no such change had been made.”
For the aforegoing reasons, we have reached the conclusion, that the judgment of the circuit court should be affirmed, but without regard to the question, whether there was a contract on the part of the state — which the city in its governmental capacity represents — with the property owners, that the law would not be changed as against them; or whether a contract obligation arose between the property owners and the city after the passage of the ordinance directing the improvement to be made.
Judgment affirmed.